# Emanuel Alexander *v.* Maryland Steel Company, Appellant.

*Negligence—Injury by falling body—Evidence.*

Where a person is injured by a falling body while lawfully engaged upon the property of another it is not sufficient to show merely that the accident occurred, the injured person, in order to recover, must also show negligence upon the part of the defendant.

In an action to recover damages for personal injuries it appeared that the plaintiff was employed by a contractor in the erection of a building. While so employed he was injured by the fall of a scaffold which had been put up by another and independent contractor. The uncontradicted testimony was that the scaffold was built of the best material, but the evidence as to whether it had been built in a proper way was conflicting. *Held,* that the case was for the jury, and that a judgment and verdict for plaintiff should be sustained.

Argued Jan. 10, 1899. Appeal, No. 204, Jan. T., 1898, by defendant, from judgment of C. P. No. 3, Phila. County, March T., 1897, No. 196, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before McMICHAEL, J.

At the trial it appeared that the plaintiff, while working in the employment of the New Jersey Wire Cloth Company in the erection of the hospital of the Medico Chirurgical College, was injured on December 7, 1896, by the falling of a scaffold put up by the defendant company, an independent contractor. The uncontradicted testimony showed that the material used in the scaffold was of the best kind. The evidence as to the manner of construction of the scaffold was contradictory.

The court charged in part as follows :

And I say to you that it is not enough for the plaintiff to have proved that an accident did happen. The burden of proof, as it is called, is upon him. He must show by testimony that which he alleges. If a man, rightfully in a building, is injured by some extraneous cause, by something falling upon him which

cannot be explained, he cannot recover unless he can show that that was caused by want of care of the individual or corporation, or its servants, whom he has sued.

Now, the determination of this question, whether the scaffold was carelessly or negligently erected or constructed and maintained, is one for you to determine under the circumstances and under the evidence, and, of course, the first effort which you will make is, if you can from the whole testimony (reconciling it if you can; if not, where there is a contradiction of testimony, deciding between the witnesses as to who is to be believed and who is not to be believed), to endeavor to come to a correct understanding of how that scaffold was erected and maintained. On that we have some testimony, and we have here the light which could be thrown on it by the explanations of witnesses of the model which has been before you. Briefly stated, and I do not say at all that I can correctly state it according to the witnesses for the plaintiff (and especially the witness Wagner), who described the condition and appearance as they saw the condition and appearance a brief time after the accident, and according to the further testimony of Wagner, the scaffold or beams on which the defendant's servant was at work was a plank or beam, on one side put through the sheet-iron covering of the amphitheatre, and, as I understand it, on the other side fastened by a ring of rope, which was on the end of the I-beam, the plank swinging or working in that rope. The defendant's witness, the man who worked on the scaffold, gave a different account of its construction. He said the planks were laid across from the I-beam to the other beams, and that one end was tightly fastened with a rope. And in these accounts there is, perhaps, some contradiction. The plaintiff's witness Wagner gave an account of conditions that presented themselves thereafter, and from which it has been argued that the way this accident happened was that the I-beam, which rested on the lug, and around which was the ring of rope, was not securely fastened there, and that by the pulling of the beam the iron was pulled off the lug, and the whole structure came down. I do not know whether with words I have correctly or can correctly put that before you, but I shall go over the testimony, as it is important that you should come to a clear and definite idea of how that scaffold or beam structure was erected and

what the cause of its fall was. Now, contrasted with that was the witness Tanger, who said that the accident happened because he made a misstep with one of his feet. In answer to a question by the court, he said he had his back to that beam, and that it was his right foot, and two or three feet from that I-beam he stepped on the angle bar, and the leverage was so great as to tear the I-beam from its fastening, and the whole thing came down. You can see it is somewhat difficult to reconcile these statements, though you may reconcile them.

Wagner told us in chief that the model was a pretty correct representation, except that the model showed they had gotten along a little faster or further with their work than was in reality the fact, and that the angle bars were not there at the time of the accident or immediately after, and that he knew that because he was the blacksmith. I express no opinion about that testimony, but I call your attention to it. I shall call your attention to the stenographer's notes of the testimony. Wagner said: " This scaffold was erected by the Maryland Steel Company's men to do the riveting on the sheet iron work which fastened on the beams, and for a man to hold the rivet, or buck up, as it is called, for another man to rivet, had to have a scaffold. One end was swinging and one end went through the sheeting which was riveted on. The iron which this rig was fastened on had slipped off the lug, and, falling down, tore the bolts loose on the other end. Q. Were there any bolts in the swinging end? A. I could not say positively to that. I only saw one bolt which had been broken. Q. That was from what end? A. That was from one end. Q. Will you state to the jury just the manner in which this scaffold was erected? A. Well, the model is very good, only they are a little too fast with the model in accordance with the way the work was at that time. Q. How much play had the end that came loose in the aperture in which it had been fixed? A. It was only about four inches on top of a lug. Q. Then what was the real cause of the falling of that scaffold?" Then that was objected to, and so on.

Mr. Peter Waits, one of the witnesses for the plaintiff, was asked: " Q. Did you see the accident? A. I did not see the scaffold when it fell. Q. What was on him at the time you got there? A. The scaffold was on him. I do not think there

was more than one piece of iron on the scaffold; that is all. I saw the scaffold and one piece of iron on the scaffold. Q. How many boards? A. Two boards. Q. How large a piece of iron? A. The piece of iron, as near as I can come, was three or four feet long. It looked like a rib." He spoke of a scaffold also, but I do not know that he spoke of this scaffold. Another witness, describing the condition of affairs, said that there was a $3 \times 4$ that was broken by a knot; that there was one end that the scaffold was resting on; and in answer to a question, he said that one end of the $3 \times 4$ was sticking in the sheet iron; and further, in answer to another question, he said, "When it broke, it seemed as if both ends came down. All I saw was lying on the ground; it was broken about the center."

Now, gentlemen of the jury, that testimony of Wagner and the other witnesses as to the construction of the scaffold, you must contrast with the testimony of the other witnesses as to the construction of the scaffold, and come to as clear an idea as you can how the scaffold was constructed; and then determine, under all the circumstances of the case, whether or not that was a careful construction and careful maintenance. That question, under the circumstances, I leave to you as a question of fact.

The defendant's witnesses have given an entirely different account from the plaintiff's witnesses, both of the construction of the scaffold and of the manner in which it was constructed and maintained; but I want to charge you and instruct you that there is no evidence in this case upon which you can base a verdict against the defendant on the use of improper material. You will have to banish that from your minds, because the testimony of the defendant and its witnesses, which was not contradicted, was that the material was of the best quality, and able to stand not only the strain which would naturally come upon it, but a much greater strain. But the manner of construction, whether it was a careful way to build the structure, I do leave to you, under the circumstances of the case, to determine as a question of fact.

Defendant's points and the answers thereto among others were as follows:

3. Where a person is injured by a falling body while lawfully engaged upon the property of another, it is not sufficient

to show that the accident happened. The injured person in such a case, in order to recover, must also show negligence upon the part of the defendant. And in the absence of any evidence of defects in, or negligent construction of, the structure which fell in this case, or negligent use of the same by the defendant or its employees, the jury cannot infer negligence, and the verdict must be for the defendant. *Answer :* I do not affirm that the verdict must be for the defendant. The first part of the point I do affirm: "Where a person is injured by a falling body while lawfully engaged upon the property of another, it is not sufficient to show that the accident happened. The injured person in such a case, in order to recover, must also show negligence upon the part of the defendant." I affirm that as a proposition of law. The latter part is declined. I think I elaborated my views somewhat at length in my general charge. [1]

5. Under all the evidence the verdict must be for the defendant. *Answer :* This point is declined. [2]

Verdict and judgment for plaintiff for $3,000. Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*A. H. Wintersteen,* for appellant, cited on the question of negligence: Crawford v. Stewart, 19 W. N. C. 48 ; MacLean v. Burnham, 19 W. N. C. 53 ; Walden v. Finch, 70 Pa. 460 ; McKenna v. Paper Co., 176 Pa. 306 ; Walton v. Bryn Mawr Hotel Co., 160 Pa. 3 ; Sykes v. Packer, 99 Pa. 465 ; Hoffner v. Prettyman, 6 Pa. Superior Ct. 20 ; Huey v. Gahlenbeck, 121 Pa. 238 ; Brunner v. Blaisdell, 170 Pa. 25 ; Spear v. P., W. & B. R., 119 Pa. 61 ; Wojciechowski v. Spreckels' Sugar Refining Co., 177 Pa. 57 ; Cosulich v. Standard Oil Co., 122 N. Y. 119 ; Searles v. Manhattan Ry. Co., 101 N. Y. 661 ; Kendall v. City of Boston, 118 Mass. 234 ; Cotton v. Wood, 8 C. B. N. C. 568.

*Thomas H. Wheeler,* with him *John A. Sparks,* for appellee, cited Ford v. Schaeffer, 186 Pa. 253 ; Del., etc., R. Co. v. Jones, 128 Pa. 314 ; Philpott v. Pa. R. R., 175 Pa. 570 ; Pittsburg, Oakland and East Liberty Pass. Ry. Co. v. Kane, 34 Pittsburg

Leg. Jour. 186; Shafer v. Lacock, Hawthorn & Co., 168 Pa. 497; Scott v. Docks Co., 3 H. & C. Exch. 595; Huey v. Gahlenbeck, 121 Pa. 238.

PER CURIAM, January 30, 1899:

Neither of the specifications of error can be sustained.

In affirming the first two sentences of the defendant's third point, recited in the first specification, the learned trial judge rightly instructed the jury: "Where a person is injured by a falling body while lawfully engaged upon the property of another, it is not sufficient to show that the accident happened. The injured person, in such a case, in order to recover, must also show negligence upon the part of the defendant." In refusing to affirm the remaining sentence of same point, by which he was substantially requested to direct a verdict for the defendant, he was undoubtedly right. The case depended on questions of fact which were clearly for the jury, and were submitted to them with fully adequate and proper instructions. There is therefore no merit in the first specification.

The subject of complaint in the remaining specification is the refusal of the learned trial judge to give binding instructions to find for the defendant. In view of the evidence such instruction would have been manifest error.

Judgment affirmed.