## Pope v. Reading Company, Appellant.

Argued April 23, 1931. Before FRAZER, C. J., WALL-
ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*Wm. Clarke Mason,* for appellant.—There was no evi-
dence to show that after the removal of the old brick
building the piece of concrete which fell on the plaintiff

was in a position likely to cause danger to anyone, and there was no evidence that whatever its position was the Reading Co. knew of it. The exact position of the gutter which fell prior to the accident is not established and there is no proof to show the cause of its fall. The learned trial judge permitted the case to go to the jury and in doing so appears to have committed error in the light of the following cases: Pennington v. Klemanski, 278 Pa. 591; Kehres v. Stuempfle, 288 Pa. 534; Brocious v. Hill, 294 Pa. 280; Manning v. R. R., 296 Pa. 380; Lonzer v. R. R., 196 Pa. 610; Zotter v. R. R., 280 Pa. 14; O'Neill v. Reading Co., 296 Pa. 319; Stone v. Phila., 302 Pa. 340.

*John Francis Williams,* with him *Raymond Pace Alexander,* for appellee.—That the recovery in the instant case is well supported by numerous cases of similar facts may be seen by a reference to the following: Booth v. Dorsey, 208 Pa. 276; Boles v. Electric Co., 89 Pa. Superior Ct. 160; Sidewell v. Gimbel Bros., 52 Pa. Superior Ct. 286; Dougherty v. Transit Co., 257 Pa. 118; Fitzsimmons v. Transit Co., 56 Pa. Superior Ct. 365; Sakach v. Antonoplos, 298 Pa. 130; Kapuscianski v. Coal & Iron Co., 289 Pa. 388; Sorensen v. Poster Advertising Co., 284 Pa. 209; Lineaweaver v. Wanamaker, 299 Pa. 45; Murray v. Frick, 277 Pa. 190; Ryan v. Granite Co., 266 Pa. 105.

OPINION BY MR. JUSTICE MAXEY, June 27, 1931:

The plaintiff on October 11, 1927, was a concrete worker engaged on a construction job near the intersection of Eleventh and Race Streets in the City of Philadelphia. On and before this date the defendant owned and operated an elevated steam railroad in Philadelphia. The plaintiff was working on the foundations of a building and the place where he was working was outside but near to the retaining wall of the defendant company's railroad. While the plaintiff was engaged in

pouring concrete a piece of cement fell from the top of the wall above him and seriously and permanently injured his hand, greatly impairing his earning power. The wall was twenty-three feet in height and three feet thick, and its entire top was covered with concrete coping four to eight inches thick. The piece of concrete that struck the plaintiff was approximately fourteen inches long, eight inches wide and four inches thick. The top of the wall from which the concrete came was examined by witnesses shortly after the accident and the coping there was found to be in a disintegrated condition; a witness described it as "cracked and rotten" and said that he was able to rake loose pieces of concrete off the wall. There was testimony also that trains running by this wall disturbed it. There was also testimony that steam pipes rested upon the coping and that these pipes constantly emitted steam and hot water and caused the wall to be in a continuously wet condition, the inference from this being that the wetness accelerated the wall's disintegration. The chief issue in the case was the alleged negligence of the defendant company.

The plaintiff was awarded a verdict for $12,000. Defendant's motion for judgment n. o. v. was overruled, and its motion for a new trial was discharged upon the filing by plaintiff of a remittitur of all sums in excess of $8,000. Defendant appealed.

The rule is well settled that in cases of appeals of this character—refusal of judgment for defendant, n. o. v.—the plaintiff must be given the benefit of every partinent fact and inference of fact reasonably deducible from the evidence: Moyer v. Pgh., Mars and Butler Ry., 275 Pa. 363; Snyder v. Penn Liberty Ref. Co., 302 Pa. 320. Plaintiff's evidence was that at the time he was injured he was working approximately one foot from the base of the wall. He then heard a train passing, and simultaneously he was struck and knocked down by a large piece of concrete coping. He testified that he had been

working at this job three or four weeks prior to the accident. He noticed that when the railroad trains passed back and forth they jarred the wall and ground. Other witnesses described the wall and the coping as we have already noted, and testified that from time to time before the accident small pieces of concrete fell from the top of the wall. There was medical testimony as to the extent and permanency of plaintiff's injuries.

Witnesses for the defendant testified that the battlement of the brick wall, which had formerly adjoined the railroad wall, extended about three feet above the latter and there was a space of about four inches between them, and someone in order to seal this four-inch space so as to keep the water from coming down between the two walls put a mixture of sand and cement in the opening and it spread over the next wall probably three or four inches adjacent thereto and formed a sort of gutter which ran the full length of the brick wall. The witness testified that the cake of sand and cement was not constructed by the defendant company. Witnesses for the defendant testified that the adjoining brick wall had not been torn down three or four years ago, but it might have been six months before the accident.

Taking plaintiff's evidence in its most favorable aspect, he presented the following case: The defendant company owned and was in possession of the wall from the top of which a loose piece of concrete fell and caused the plaintiff's injuries, the concrete on top of this wall had been loose and pieces had been falling therefrom for at least two weeks prior to the accident, the coping from which the piece of concrete broke loose was in a disintegrated condition at and before the accident, steam pipes rested upon this coping and made it continuously wet, and this entire wall was frequently jarred by passing trains.

Was the court below justified in this state of the record in submitting to the jury the question of defendant's negligence? In Pennsylvania the doctrine of res ipsa

loquitur does not apply to this class of cases. "Where a person is injured by a falling body while lawfully engaged upon the property of another, it is not sufficient to show that the accident happened. The injured person, in such a case, in order to recover, must also show negligence upon the part of the defendant": Alexander v. Steel Co., 189 Pa. 582.

On account of the fact that ordinarily more people pass on the sidewalk in front of one's property than are ever likely to pass over or congregate on a lot alongside of one's property, the person in possession of property is held to a higher degree of care in respect to the safeguarding of a wall or other structure in front of that property and near a street or footway than he is to his wall or structure not adjoining a public highway or footway. However, this court in Fitzpatrick v. Penfield, 267 Pa. 564, 573, recognized "the duty of an owner upon whose land something is erected, which has become dangerous because of a conflagration, to take ordinary precautions so that no injury shall befall the adjoining owner, his property, or persons rightfully thereon." Such precautions must be taken when the wall or other structure has become dangerous from any cause and its dangerous character has become manifest to the owner or person in charge of it or would be manifest to the latter if he used ordinary care and foresight.

While the doctrine of res ipsa loquitur does not, as we said above, apply to cases in which a plaintiff is injured by a falling body, the negligent acts of omission by a defendant in such cases may be shown by establishing facts and circumstances from which his negligence may be legitimately inferred. It is not a case of presuming negligence from the mere happening of an accident, but it is a case of inferring negligence from the circumstances from which the accident apparently arises. Negligent acts of commission are usually proved by direct evidence, as for example when the injury complained of arises from the defendant's reckless operation of a motor

vehicle. Negligent acts of omission are usually proved by circumstantial evidence. Examples of the use of such evidence to prove negligent acts of omission in cases in which persons are injured by falling objects not actually thrown or dropped are not uncommon. In Ryan v. Woodbury Granite Co., 266 Pa. 105, the plaintiff, an employee of a contractor engaged on a building construction, was injured by the falling of a portion of tile. This court there said: "An employee of the defendant, which was the granite contractor on the building, broke out one of these tiles and started to break out an adjoining one, the opening being made for the purpose of lowering through it a block and tackle wherewith to move the granite block used by the defendant in its work in the hall below......Defendant knew that tiles supported only on three sides are more apt to fall than those supported on all four sides; and hence, in making the opening, and in inspecting the tiles surrounding it at the time it was made and thereafter until it was closed, defendant was bound to exercise care proportionate to the risk to which it thereby exposed those who would be constantly using the floor below. Yet, so far as appears, there never was any real inspection......It does not clearly appear whether the falling of the tile was the result of an injury to it in making the opening, or of the striking and grinding of the rope and chain against it, or of the jarring of the partially supported tile while the work was being done. Perhaps it was not possible to show the fact, for the hole was four or five stories from the floor below, and was covered at the top by the timber around which the chain was fastened. Starting, however, with the facts testified to at the trial, that the tile appeared in perfect condition before defendant broke into the floor, the cutting out of one tile would weaken the bond which held the adjoining tiles in place, and only defendant's employees had anything to do with the opening, the tile, or the block and tackle, and the further fact that the evidence failed to disclose

any other reasonable explanation for its falling, we have a case plainly for a jury to decide, not as a matter of guess-work, but from the reasonable probabilities arising out of the facts above detailed."

Negligence has been often and authoritatively defined. as "want of care under the circumstances." The word "circumstances" is comprehensive. It embraces the entire sum of the attendant facts, including the operation of the forces of nature so far as they bear upon or relate to the happening of the central event. A person is charged with ordinary knowledge of the workings of these forces, and his conduct, if it is to escape being stigmatized as wanting in care, must conform to the normal workings of the forces of nature. At common law it was held that every man must have some knowledge "of the quality of his beast" (1 Hale P. C. 430) and use appropriate means to keep that beast from harming people. Public welfare requires that this same salutary rule apply to the inanimate objects in a man's possession and subject to his intelligent control. For example, when a person places a milk bottle or other object on the window ledge of a building, he does so in the knowledge that the wind or some vibration may dislodge that bottle and gravity will cause it to fall. When he leaves his automobile on a grade, with the brakes not effectively set and without turning the front wheels to the curb, he is chargeable with knowledge of the fact that gravity is likely to cause that vehicle to move down grade and injure persons in its path. The captain of a ship which enters a certain area of the North Atlantic at the time of the year when icebergs are drifting southward must navigate his ship with that cautious care which ordinary knowledge of and respect for the power of the icebergs demand. The want of such care and caution caused the loss of the Titantic. When a person dams a large body of water at a point in a valley above human habitations, he is chargeable with the knowledge that pressure of that body of water will be exerted

against that dam, and if it overcomes it the water will rush down into the valley, carrying death and destruction. Therefore, he must so build and maintain his dam as to withstand the water's pressure. Not only must he have a care in the building of the dam, but he must continually give the dam due inspection so that signs of deterioration may be noted and steps taken to overcome nature's disintegrating processes. A person in possession and charge of a stone wall adjoining a place where other persons have a right to be must consider the fact that even walls of stone and concrete deteriorate and may become a menace to human safety. In the instant case the wall, from the top of which the concrete fell, was owned, possessed and under the management of defendant. The most casual inspection of the top of this wall would have revealed the presence of large loose pieces of concrete. The falling of loose pieces of concrete previous to the accident charged the defendant and its servants with knowledge of this wall's menace. There was evidence from which the jury could legitimately infer that the defendant was negligent in permitting loose pieces of concrete to remain on the wall—pieces which when operated on by natural forces might fall twenty-three feet and injure persons lawfully below. A person in possession and control of a high stone wall at a place where others have a right to be is under obligation to have that wall inspected at reasonable intervals and is chargeable with knowledge of its condition unless its condition has suddenly changed and he has had no time in which to acquaint himself with this change. If any part of that wall is in a menacing condition, its possessor can reasonably anticipate that someone may be injured by it, and he must take steps to make it safe. If he fails to do so, he is answerable for the consequences. A long-standing wall twenty-three feet in height cannot be regarded as something so completely free from lurking dangers as not to require inspection and care, particularly when it is subject to the frequent jarring of

passing trains. It is a matter of common knowledge that walls crumble and cause injuries. In the case before us, pieces of concrete had been dropping from the coping of the wall for at least two weeks before the accident. Therefore, defendant was chargeable with knowledge of its dangerous condition and should have taken forethought of the injury it would likely inflict upon persons at its base. It was the duty of defendant to guard against the manifest and appreciable chances of human harm naturally arising from these conditions. This duty the defendant did not discharge, and as a result plaintiff was injured.

The judgment is affirmed.

Mr. Justice SCHAFFER dissented.