Bisson *v.* John B. Kelly, Incorporated, Appellant.

Argued December 5, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Thomas Raeburn White*, of *White, Schnader, Maris & Clapp*, for appellant.

*Otto Kraus, Jr.*, with him *Gartner, Felger & Lemisch*, for appellee.

OPINION BY MR. JUSTICE MAXEY, January 15, 1934:

This is an appeal from the judgment of the Court of Common Pleas No. 2 of Philadelphia County, entered on a verdict in favor of plaintiff in the sum of $15,000, after defendant's rule for a new trial and motion for judgment n. o. v. were discharged.

On February 17, 1931, the plaintiff, while working on the construction of a building, was hit on the head and seriously and permanently injured by a piece of tile fall-

ing nearly fourteen feet and weighing twenty pounds. He was employed by the Gorham Company, subcontractor of the building's bronze and ornamental iron work. Defendant was the subcontractor for the brick and hollow tile work and constructed, twelve inches from the main wall on the fifth floor, a "furring" wall, from the upper tier of which fell the piece of tile. This wall was eight feet in length from one window to another and was fourteen feet in height. It was built up to a line four feet below the ceiling, except at the middle, where the tiles were extended to the ceiling. It consisted of hollow tiles twelve inches wide and three inches thick. The tiles were set in cement. The wall's only attachment to the main wall was by "returns" at each end, which were cemented to the main wall. Between the "returns" at each end, the tiles were not anchored to the main wall by metal ties. Except for these "returns" and a small attachment to the ceiling from the center of the top, this wall was not supported by ceiling brace, floor brace, or by any metal ties.

Outside of the window, which was contiguous to the tile wall, was a hoist used by stone masons. Its running caused a noticeable vibration. Just prior to the accident, plaintiff felt a vibration from the hoist.

An expert witness testified for the plaintiff that "in a case like this," he "would not think it would be safe to let it [the cement] stand alone under twenty-eight days because there is sometimes shrinkage after it dries. . . . . . . This shrinkage causes cracks in the mortar." He also testified that vibration would adversely affect the cement's holding power within a period of four days after it was used. The accident to plaintiff happened four days after the tiles were laid in cement. There was further expert testimony to the effect that the near-by vibration "would cause the breaking of the bond" of the tile.

At the time plaintiff was injured, he had stepped out of the window, where he had been oiling pulleys, to get

some more oil on a rag, and as he leaned over to reach the can of oil the falling tile hit him on the head and arm.

The negligence averred was, in substance, that the defendant, its servants, etc., affixed this tile to the wall in a careless manner and permitted it to remain in a dangerous condition.

Apparently the defendant built the wall according to plans and specifications. Between the top of the wall and the main ceiling there was later to be erected by another contractor an artificial ceiling and to this ceiling the top of the fourteen-foot wall was to be "tied." With that the defendant company had nothing to do, but it did know that some time would have to elapse after the completion of its work before the new contractor could begin his work on the artificial ceiling and the "tieing" of the wall thereto, for the holding cement would have to be given time to "set" before the complementary construction work could be begun.

We said in Pope v. Reading Co., 304 Pa. 326, 331, 156 A. 106: "While the doctrine of res ipsa loquitur does not apply to cases in which a plaintiff is injured by a falling body, the negligent acts of omission by a defendant in such cases may be shown by establishing facts and circumstances from which his negligence may be legitimately inferred. It is not a case of presuming negligence from the mere happening of an accident, but it is a case of inferring negligence from the circumstances from which the accident apparently arises. ...... At common law it was held that every man must have some knowledge 'of the quality of his beast' (1 Hale P. C. 430) and use appropriate means to keep that beast from harming people. Public welfare requires that this same salutary rule apply to the inanimate objects in a man's possession and subject to his intelligent control. For example, when a person places a milk bottle or other object on the window ledge of a building, he does so in the knowledge that the wind or some vibration may dislodge that bottle and gravity will cause it to fall." We there

cited Ryan v. Woodbury Granite Co., 266 Pa. 105, 110 A. 279, where the plaintiff, who was an employee of a contractor engaged on a building construction, was injured by the falling of a portion of tile. In that case this court said: "Defendant knew that tiles supported only on three sides are more apt to fall than those supported on all four sides; and hence, in making the opening, and in inspecting the tiles surrounding it at the time it was made and thereafter until it was closed, defendant was bound to exercise care proportionate to the risk to which it thereby exposed those who would be constantly using the floor below."

In the instant case the fact that defendant permitted a twenty-pound tile to remain unsecured, except by "green" cement, in the side of a wall fourteen feet above the floor where workmen were likely to be, which wall was not supported by a ceiling brace, floor brace or by any metal ties, and the further fact that this wall was near a hoist which when operated caused the wall to vibrate, are facts which here justified a finding of negligence.

The pivotal question is: A duty having been breached, with serious consequences to the plaintiff, who was the breacher? Appellant argues that "the duty breached (if any duty existed) rested on the general contractor to protect persons working on the floor from any danger lurking in this wall." Appellant cites as the leading case on this question, Hooey v. Airport Const. Co. et al., 253 N. Y. 486, 171 N. E. 752. In that case an employee of the subcontractor was assigned the building of the walls of hangars. Other subcontractors, roofers, carpenters, and manufacturers of sash had their allotted tasks. One day the south wall of hangar No. 2 had been carried by the subcontractor to the level of the window sills. On the next day by 11 a. m. the brick piers had been built between the windows, and between the windows and the door. "The masons then gave way until the sash was set in place. They left their tools, bricks, and mortar on the

spot, for they would have to return at a later stage and construct the brick sills. An employee of the subcontractor for the sash began his work at the wall on the morning of the next day. The wall was eight inches thick, about fifty feet long, and nine feet high, with neither roof nor rafter nor partition to bind it to the hangar of which it was to form a part. It had been left standing in the open country, swept by heavy winds, without braces or supports. Shortly after the plaintiff began placing the sash, the piers toppled over and buried him below." He sued the general contractor. The only question *decided* in that case was whether or not the general contractor was subject to any duty toward the plaintiff which had been breached, "whatever," as Chief Judge Cardozo said, "may be found to be the liability of others." He also said: "The question is a closer one whether the mason subcontractor was also in default. ...... So far as the record shows, the subcontractor might reasonably assume, when its masons stepped aside, that the general contractor, there at hand upon the job, would not fail in the discharge of duties incidental to the enterprise." That case, therefore, did not decide whether or not the mason subcontractor who actually did the work which was left unbraced or unsupported, was guilty of negligence toward the plaintiff. The facts of that case differ from the facts of the case now before us in this essential respect. The subcontractor who built the walls had reason to expect, as appears from the quoted facts, that the walls would stand alone *but a very short time* until the work would be carried forward. It does not appear that the mason subcontractor had reason to expect that heavy winds would demolish the wall before the work of the other contractors would make it secure. Here the tile stood at least four days before the plaintiff was injured. Meanwhile no one had done anything to further secure the tiles and it is a fair inference that it would have been inexpedient to carry this work forward as planned until the tile had "set." Therefore,

the defendant subcontractor should have anticipated that before the work already done was permanently secured, some persons would be endangered by it, and therefore the defendant should have done what common prudence called for. The jury was justified in finding that the duty breached was the defendant's, even though there might also have been some breach of duty on the part of the general contractor. "Where negligences are concurrent, both defendants are jointly and severally liable for the injuries thereby occasioned": Hughes v. Pittsburgh T. Co., 300 Pa. 55, 60, 150 A. 153. (In the instant case only one defendant was sued.)

In 45 C. J. 655, it is said: "One is bound to anticipate the reasonable and natural consequences of his own conduct."

In Com. v. Pierce, 138 Mass. 165, 52 American Reports 264, Mr. Justice HOLMES said: "Knowledge of the dangerous character of a thing is only the equivalent of foresight of the way in which it will act. We admit that if the thing is generally supposed to be universally harmless, and only a specialist would foresee that in a given case it would do damage, a person who did not foresee it and who had no warning would not be held liable for the harm. ...... The use of the thing must be dangerous according to common experience, at least to the extent that there is a manifest and appreciable chance of harm from what is done."

"All foreseeable dangers are to be considered in the solution of the problem whether the creation of the situation was a negligent act": Collins v. Hustis, 79 N. H. 446, 111 A. 286.

In St. Louis Expanded Metal Fireproofing Co. v. Dawson, 30 Tex. Civ. A. 261, 70 S. W. 450, it was held that a subcontractor engaged in putting in cement floors in a building, who, after replacing a cracked panel, removed the support, without giving the panel sufficient time to harden and become safe, should have foreseen that persons going on it would receive injury and that employees

at work in other parts of the building where their work was not completed might go over the panel."

In McGlone v. William Angus, Inc., et al., 248 N. Y. 197, 161 N. E. 469, the question whether a contractor engaged in setting stone on a building being erected, who placed boards over iron beams forming scaffold or flooring for its derricks, could reasonably anticipate that other workmen on the structure would walk over the flooring, as plaintiff, employed by the company erecting the iron work, did, was held to be for the jury. Judge CRANE said: "Negligence is gauged by the ability to anticipate. The Angus Company apparently knew that its men were not the only ones at work upon the building. As the iron work went up, the stone work soon followed. Both classes of employees were working together. When the Angus Company placed boards over the iron beams forming a scaffold or flooring for its derricks, could it reasonably anticipate that other workmen on the structure would walk over the flooring? On the evidence this was a question for the jury. ...... It was the duty of the defendant to erect its platform or flooring with due regard of the user by others; that is, it was under the duty to use reasonable care to construct it safely for those whom it had reason to anticipate would naturally and customarily use it in the course of the work."

In Pennsylvania Steel Co. v. Elmore, etc., Contracting Co., 175 Fed. 176, it was held that where defendant, a subcontractor for concrete piers of a bridge, failed to mix the concrete properly and constructed the piers in such a manner that they were unsafe, with knowledge that plaintiff, an independent subcontractor for the iron work, would necessarily place heavy, valuable materials and tools thereon, and one of the piers disintegrated and fell, causing damage to plaintiff's materials and tools, defendant was liable.

Whether the danger from this falling tile was a danger foreseeable by this defendant which placed the tile in a position which made it a menace was a question for

the jury. The court would not have been justified in holding as a matter of law that the duty of defendant in respect to this tile ended when it was put in place. Possibly his duty *to the principal contractor* then ended— the contract between them is determinative of that question. But his duty to those who might be lawfully beneath that tile before the cement had done its work was not terminated when the tile was placed. It might as well be argued that one who has a contract to deliver a dangerous beast to a man's premises, discharges his full duty in relation to that beast when he turns the beast loose on the premises indicated. In such a case his *contractual* duty might have been fully discharged by the delivery stated, but his *social-legal* duty would not have been discharged if the beast had been delivered and set free at a place where it might reasonably be expected that it would do human harm. A subcontractor who had a contract to extend a copper wire a certain distance would not be justified in leaving the wire in a position where persons would be liable to come in contact with it, *if he had reasonable grounds to believe that a considerable period of time would elapse before another contractor would tie that line to a pole and that immediately after he, the first contractor, had extended the line, it would be charged with dangerous voltage of electricity.* These are examples of situations more extreme than the situation before us, but, the principle that should guide us in determining the nature of the duty owing and whether or not it was breached is the same *in all three cases.* That principle is that "the law exacts of one who puts a force in motion that he shall control it with a skill and care proportioned to the danger created": 20 R. C. L., page 51, section 47.

In Koelsch v. The Philadelphia Co., 152 Pa. 355, 363, 25 A. 522, this court said: "While no absolute standard of duty in dealing with such agencies [i. e., dangerous agencies] can be prescribed, it is safe to say in general terms that every reasonable precaution suggested by ex-

perience and the known dangers of the subject ought to be taken." A hollow tile, a foot square, three inches wide, and weighing twenty pounds, placed in a position where it is likely to fall fourteen feet on human beings comes within the description of "a dangerous agency."

We agree with appellant that there is no basis for any liability from the defendant to the plaintiff *in the contract* between the defendant and the general contractor. The provision in that contract that the defendant should not only build the wall in question but should also undertake "the protection of finished work during course of construction" obviously means that the subcontractor should protect *the work itself* during its construction and not protect *others against it.* Even if this provision should be interpreted as requiring the defendant to protect the walls so as to avoid injury to third persons it would be unavailing to third persons suing defendant for negligence. At most, this provision coupled with the interpretation now rejected, would be only in the nature of an indemnifying agreement, making the subcontractor answerable for damages, *to the general contractor,* should a suit be successfully brought against the latter for an injury resulting from the former's work.

The status of "donee beneficiary," either actually or by analogy, in a contract does not in a tort action help that beneficiary even though the tort be an offspring of the subject-matter of the contract. Of course, if a contractor is informed by the contract that the work specified is for a certain third person's use and benefit, he is precluded from claiming in a negligence action by that third person that he owed no duty to him. Yet a defendant is in no better position in such an action when, though the third person is not named in the contract, it was or should have been obvious to defendant that "third persons" would actually be brought into contact with the work contracted for.

In 45 C. J. 649, is stated this principle: "It is a well recognized rule that, where the *only duty* [italics sup-

plied] which has been breached by the person charged with negligence is a duty created by contract, it is necessary, in order that he be held liable, that there should be some privity of contract between him and the person who has been injured by such breach."

Appellant cites the case of Curtin v. Somerset, 140 Pa. 70, 21 A. 244. The facts in that case and in the present case are quite different although there is an analogy between them. However, this court said in Griffith et al. v. Atlantic Refining Co., 305 Pa. 386, 391, 157 A. 791: "It is to be noted that the rule laid down in Curtin v. Somerset has been very much modified by the decision in Grodstein v. McGivern [303 Pa. 555, 154 A. 794]." In the latter case this court held that "where a husband contracts for work in and about a house used by himself and family as a home, and on the installation of the improvements the work is performed in a defective or improper manner and injury results to the wife, the contractor is answerable to her in damages even though she was not a party to the contract." In that case this court said in an opinion by the present Chief Justice, quoting from Schermerhorn's Outlines in Tort, page 328: " 'A is, however, held to owe C a duty of care where, although C was no party to the contract, it should, under the circumstances, have been obvious to A that C would necessarily, in the natural course of things, be brought into contact with or would use the defective article or structure so furnished.' " In view of this recent decision it is unnecessary to discuss or attempt to distinguish at length the case of First Presbyterian Congregation v. Smith and Minnahan, 163 Pa. 561, 30 A. 279, relied upon by appellant. That was an action for damage caused by a break in a sewer alleged to have been negligently constructed, and there had been an acceptance by the city of the work. In the case before us there is no testimony that the wall had been accepted by the general contractor. The only evidence that would support the theory of implied acceptance was that a day

or two before the accident uprights for a scaffold had been erected by another subcontractor to enable his employees to construct the "ceiling" to which the "furring" wall was to be tied. The defense of acceptance was not pleaded.

The duty defendant breached was a duty imposed by law, not a duty self-imposed by contract. It is a primary *social* duty of every person to take thought and have a care lest his action result in injuries to others. This social duty *the law* recognizes and enforces, and for any injury resulting from any person's lack of elementary forethought, the law holds that person accountable. A normal human being is held to foresee those injuries which are the consequence of his acts of omission or commission which he, as a reasonable human being, should have foreseen. The question whether a person charged with negligence or negligent acts or omissions should have foreseen the injuries resulting from those acts or omissions is for the jury, if there is any credible evidence from which a reasonable conclusion can be drawn in support of the claim of neglect of duty. "A verdict should not be directed if on all the facts and circumstances there is room for fair and sensible men to differ in their conclusions": McCracken v. Curwensville Boro., 309 Pa. 98, 114, 163 A. 217. Measured by this testing standard the instant case was for the jury.

In sustaining this judgment we are not unmindful that the law must take into account the fact that as an incident to nearly all extensive building operations there are menaces to third persons and that it is sometimes impracticable to make secure unfinished work before it is connected up with the remaining part of the work planned. Construction work may of necessity be momentarily in a condition dangerous to third persons and if the constructor has reason to believe that it will be carried forward at once by others and rendered safe for third persons in its vicinity, his duty promptly to eliminate or at least reduce the menace he created is corre-

spondingly decreased. However, even momentary menaces should be safeguarded against as far as practicable, as for example, constructors do when they erect a sidewalk shelter adjacent to buildings under construction. Here defendant's unfinished work had to remain unfinished for many days, at least until the cement had "set" sufficiently for the related construction to go forward without damaging the work already done. It was, therefore, manifestly the duty of the subcontractor who fabricated the menace to circumscribe its dangerous attributes as far as was practicable under the circumstances. This the jury found the defendant did not do.

The judgment is affirmed.

DISSENTING OPINION BY MR. JUSTICE KEPHART, January 15, 1934:

I do not agree with the majority that John B. Kelly, Incorporated, was in any way responsible for this accident. Plaintiff was injured by being hit on the head by a piece of tile while working on a building then under construction. He was employed by a subcontractor doing ornamental bronze work. Defendant was a subcontractor doing brick- and hollow tile-work. Plaintiff was injured February 17th. His evidence showed that all of the defendant's work had been finished on February 13th, four days before the accident, and that defendant's men had left the floor at that time.

The wall which the defendant built was according to plans and specifications, and his work was completed. The wall was to be further tied with other work of the general contractor, but that was not defendant's business. The brick or tile which is supposed to have fallen on plaintiff was set in cement not later than February 13th, and so remained until the 17th. It is in plaintiff's evidence and is a matter of universal knowledge that the cement would have so hardened that it would have been necessary for some hard blow to dislodge the tile. It appears in evidence that it was impossible for it to have

112

fallen of itself or from ordinary vibrations. There was no evidence whatever as to the cause of the accident.

If the wall was improperly constructed, it was done so according to plans and specifications. This was no fault of defendant. The verdict was a pure guess: Laing v. Remington Arms Co., 264 Pa. 130. The defendant having completed his work was in no way responsible for what followed. If the wall needed a guard or brace, it was the duty of the general contractor on the whole work to furnish it.

I would enter judgment for the John·B. Kelly, Incorporated Company.

Justices SCHAFFER and LINN concurred in this dissent.