## Stebner, Appellant, *v.* Young Men's Christian Association.

Argued November 22, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused February 21, 1968.

*Martin M. Fine,* with him *Fine and Eisenbeis,* for appellant.

*John C. Gault,* with him *Candor, Youngman, Gibson & Gault,* for appellee.

*H. Clay McCormick,* with him *Furst, McCormick, Muir, Lynn & Reeder,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 9, 1968:

On November 8, 1963, Raymond F. Stebner, the plaintiff in this case, entered the Williamsport YMCA to use its facilities as an invitee of the management, he having previously been a paid member of the organization. Undressing, he went into the heat room where he remained for 12 minutes, having been warned by an officer of the YMCA not to stay there too long. From the heat room he went into the steam room. No one had told him how to regulate the steam in this enclosure so he asked a Bill Miller, in the room with him, to open the door, which, however did not respond to his efforts. Stebner then tried turning the knob himself but the bolt of the lock refused to move. At this moment Stebner saw the shadow of a person on the other side of the glass panel of the door and he banged on the wooden section of the door to attract that person's attention. In the banging process his left hand (he being left-handed) slipped and went through the glass. Blood gushed from a severe cut and he called

out in excitement and alarm, "Get me out of here, get me out of here!" Nobody responded to his cry. In the meanwhile the bleeding from his arm continued profusely. Unnamed persons finally got to the door from the outside but they also had difficulty in unlocking it. He yelled to one of the men to "pick the glass out of the door and I'll crawl free, crawl through the door." Eventually the door unlocked and the wounded man was lowered to the floor while an ambulance was summoned.

He was taken to the hospital. The severe lacerations he had sustained called for corrective surgery, including a transplant of an ulnar nerve. His arm was placed in a cast for six weeks. He had to take physiotherapy for some 26 weeks. His medical expenses amounted to $1,812.73 and he averred a monetary loss in wages and commissions (he was an insurance agent) in the amount of approximately $6,000.

He brought an action of trespass against the YMCA and the Lundy Construction Co., which had built the steam room. After he presented his evidence at the ensuing trial, the court entered an involuntary nonsuit in favor of both defendants. The plaintiff appealed.

The court in its opinion refusing to take off the nonsuit admitted that there was a defect in the lock of the door behind which the plaintiff had been imprisoned. In its findings of fact the trial court said: "4. Prior to the incident there had been difficulty with a latch or lock on the steam room door; the door would not stay closed. 5. The Y.M.C.A. knew that the door latch or lock had not been operating properly but its knowledge was limited to the fact that the latch or lock did not operate properly when the door was closed; sometimes the door would not stay closed. At the time of inspection after construction, it operated satisfactorily from inside the steam room. 6. Graphite had

been applied to the door lock or latch to relieve the problem in closing the door. It did so."

The trial court admitted further: "9. On the day of the incident the plaintiff and another person entered the steam room together, the plaintiff preceding. 10. The plaintiff sought to leave the steam room immediately after he entered it. 11. The plaintiff's companion tried to open the door from the inside when the plaintiff asked him to do so but did not succeed. The knob turned but did not withdraw the bolt from the keeper in the door frame. 12. Plaintiff then tried to open the door by turning the knob but had the same difficulty. 13. The plaintiff then tried to rap on the wooden part of the door, next to the glass, in order to gain the attention of someone on the outside. In doing so, his hand struck the glass insert of the door, broke the glass and passed through the glass in such a manner as to result in laceration of his hand and forearm."

In view of these factual findings of a defect of some kind in the lock of the door, with knowledge on the part of the YMCA officials, the court should have permitted the jury to pass on the subject of the averred negligence. The elementary rule in cases of this kind was well stated long ago by Chief Justice AGNEW in the case of *Hydraulic Works Co. v. Orr*, 83 Pa. 332: "Duties arise out of circumstances. Hence, where the owner has reason to apprehend danger, owing to the peculiar situation of his property and its openness to accident, the rule will vary. The question then becomes one for a jury, to be determined upon all its facts of the probability of danger and the grossness of the act of imputed negligence."

Those charged with the operation of the YMCA facilities had good reason to apprehend danger because of the defective lock of the door of the steam room. A steam room, while built and operated for the purpose of improving the health of its users, can, un-

less properly constructed and supervised, become a device for inflicting grave injuries, including scalding, burning, asphyxiation, and even death.

When the management learned that the latch or the lock did not function properly, it became its duty to make such repairs or correction as would insure an easy opening as well as shutting of the door. The trial court admitted that the evidence showed "that the latch or lock did not operate properly when the door was closed." It added that "sometimes the door would not stay closed." But there was evidence also that when closed the door at times would not open.

The fact that the plaintiff may have precipitated his eventual injuries by knocking vigorously on the door does not excuse the original negligence of the YMCA, which compelled Stebner to resort to pounding in order to attract the attention which would release him from the steaming Hades in which he found himself. Once the YMCA learned of the defective door, a duty resulted to take reasonable means to prevent harm to those who were invited to use the steam room.

A building owner responsible for placing an invitee in a dangerous situation cannot escape responsibility for an injury resulting to the invitee, merely because the victim, in fright, frenzy or panic adds to his danger by an act which, in a later serene moment of contemplation, might seem to have been unwise. A landlord who fails to provide proper fire escapes may not escape liability for harm suffered by a tenant who, besieged by flames in his room, leaps from a fourth story window a minute before rescue, unknown to him, would have arrived.

In *Lehner v. Pittsburgh Railways Company*, 223 Pa. 208, the transit company protested the verdict awarded the plaintiff, who was found lying on the street after the streetcar in which she had been riding, uncontrolledly coasted down a declivity because of a defect

in the braking process. The company complained that there was not sufficient evidence that the defendant's negligence was the proximate cause of the plaintiff's injuries, nor was there testimony as to how she got to the street. In upholding the verdict, this Court said: "It is true that the plaintiff could not recall the precise manner in which she passed from the rear platform to the street; but it was shown that she as well as other passengers pressed to the rear platform, and directly afterwards she was seen lying upon the street. The obvious inference was that she jumped from the platform of the car to the ground. If the car was running away rapidly down a dangerous grade, and the plaintiff had a well-grounded fear of imminent danger, she was justified in obeying the instinct of self-preservation, and in jumping from the car, if that seemed to be the best method of escape. . . . The facts of this case, and the inferences to be drawn from them, were undoubtedly for the jury."

In a somewhat similar set of circumstances, this Court said in *Palmer v. Warren St. Ry. Co.,* 206 Pa. 574: "A well grounded fear that a collision is about to take place, which will result in fatal or even serious injury to the passenger, is a justification to him to leap from the car; and the presumption of the common carrier's negligence is not confined to the case of injuries resulting from actual collision, but extends to those caused by an effort to escape it, when made on a well grounded belief that it will occur."

Under the circumstances surrounding Stebner, with the fumes of the steam assailing him and the door refusing to yield to the desperate efforts of himself and the others, the court was not justified in declaring as a matter of law that Stebner could not have entertained a well-grounded belief that it was necessary for him to escape from the steam room as rapidly as possible to save himself from serious harm, and to attempt to

summon rescue by banging on the door when vocal calls failed to bring response.

In *Cohen v. Phila. & Reading R. R. Co.,* 211 Pa. 227, this Court said: "As applied to negligence cases, the rule has been stated by this court to be that where there is a doubt as to the inference to be drawn from the facts, or where the measure of duty is ordinary and reasonable care, and the degree or care required varies with the circumstances, the question of negligence is necessarily for the jury."

Despite the foggy notion that the law is devoid of feeling and operates only on cold, metallic technical rules, a reading of the decisions will reveal shafts of sunlight which dissipate the fog and proclaim the dedication of jurisprudence to justice. This Court said in *Bisson v. John B. Kelly, Inc.,* 314 Pa. 99: "It is a primary *social* duty of every person to take thought and have a care lest his action result in injuries to others. This social duty *the law* recognizes and enforces, and for any injury resulting from any person's lack of elementary forethought, the law holds that person accountable. A normal human being is held to foresee those injuries which are the consequence of his acts of omission or commission which he, as a reasonable human being, should have foreseen."

Apart from foreseeability, the YMCA owed Stebner the affirmative duty of maintaining its premises "in a reasonably safe condition for the contemplated use thereof and for the purpose for which the invitation was extended, or to give warning of any failure to maintain them in that condition."; *Jerominski v. Fowler, Dick & Walker,* 372 Pa. 291. The YMCA management knew the lock mechanism on the door was not functioning perfectly. It could well be a question of fact for the jury to determine whether it should not at least have exhibited a sign warning users of the steam room of the unreliability of the door lock, so as to place

steam room bathers on notice of the danger inherent in a jammed door.

The court erred in entering a nonsuit in favor of the YMCA and the judgment sustaining that nonsuit is reversed. However, that part of the judgment sustaining the nonsuit in favor of the Lundy Construction Company is affirmed.

Mr. Chief Justice BELL, and Mr. Justice JONES and Mr. Justice COHEN dissent, as to reversing the judgment of nonsuit entered in favor of YMCA.