**Bourlier v. Bell Telephone Company
of Pennsylvania**

*Mary Alice Duffy*, for plaintiffs.
*Thomas Gibson*, for defendant.

BULLOCK, *J.*, August 18, 1980—Before the court is plaintiffs' motion to take off a compulsory nonsuit entered on October 4, 1979.

The complaint in trespass herein avers that on June 9, 1973 the 15 year-old minor-plaintiff was injured when he was pushed or jostled by an unknown person into a glass door of a telephone booth located in Bishop Conwell High School in Levittown, Pa. Minor-plaintiff's injuries consisted of serious cuts to the hand and arm received as the

glass door shattered and plaintiff's hand went through it.

At trial, plaintiffs proved the happening of the accident and rested. Upon defendant's moving for a compulsory nonsuit, plaintiffs argued that the "exclusive control doctrine" applied and that consequently, upon plaintiffs' proof of the accident, the burden shifted to defendant. Our Supreme Court addressed itself to the exclusive control doctrine in Gilbert v. Korvette's Inc., 457 Pa. 602, 327 A. 2d 94 (1974). It discussed the confusion which had arisen with respect to the exclusive control doctrine, res ipsa loquitur and circumstantial evidence in tort cases. It, in essence, abandoned the exclusive control doctrine and the narrow Pennsylvania interpretation of res ipsa loquitur and instead adopted section 328 D.(1) (entitled Res Ipsa Loquitur) of the Restatement, 2d, Torts, which provides as follows:

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff."

We do not regard this as a case in which the doctrine of exclusive control, res ipsa loquitur, or section 328 D. of the Restatement, is appropriately applied. Plaintiffs would have us ask: "Ordinarily would a person be injured by broken glass on being pushed into a telephone booth door, unless defendant telephone company negligently failed to provide shatterproof or thicker glass?" In our view, the im-

mediate response is that this is not a situation to which the word "ordinarily" applies. There is no obvious historical pattern of which a jury would be expected to take notice. We do not believe that the ordinary reasonable person has enough information to assume fault on defendant's part in this case simply because of the nature of the accident. Any such assumption would have to be based on speculation.

It will be noted that Restatement section 328 D.(1)(b) specifically provides that the doctrine of res ipsa loquitur is not applicable where the evidence indicates that a third party was a "responsible cause." In the present case, the unknown person who pushed or collided with plaintiff is actually the basic responsible cause for plaintiff's injuries. Plaintiffs, however, would invoke another section of the Restatement, 2d, Torts, namely, section 302 which provides as follows: "A negligent act or omission may be one which involves an unreasonable risk of harm to another through either . . . (b) the foreseeable action of the other, a third person, an animal, or a force of nature." Sections d. and e. of the comment to this section read in part as follows:

"d. Probability of Intervening action. If the actor's conduct has created or continued a situation which is harmless if left to itself but is capable of being made dangerous to others by some subsequent action of a human being or animal or the subsequent operation of a natural force, the actor's negligence depends upon whether he as a reasonable man should recognize such action or operation as probable. The actor as a reasonable man is required to know the habits and propensities of human beings and animals and the normal operation of natural forces in the locality in which he has

intentionally created such a situation or in which he knows or should realize that his conduct is likely to create such a situation. . . .

"e. Meaning of 'normal.' The actor as a reasonable man is required to anticipate and provide against the normal operation of natural forces. And here the word 'normal' is used to describe not only those forces which are constantly and habitually operating but also those forces which operate periodically or with a certain degree of frequency."

Plaintiffs argue simply that the alleged dangerous situation was in a high school where rowdy conduct may reasonably be assumed. In our view, this evidence is insufficient to create a jury issue without some evidence that defendant had reason to anticipate this particular accident as not merely possible, but reasonably probable. In other words, we believe plaintiffs, in the absence of other types of proof discussed hereinbelow, had an obligation to show that there was periodic or somewhat frequent pushing of persons into telephone booth doors by high school students, if not at the high school in question, at least in comparable high schools and that this fact was known, or should have been known, to defendant.

Whether or not defendant was living up to its duty of care to people in and around its telephone booths by having nonshatterproof glass in the doors of its booths we believe could have been established by various kinds of proof, including (1) history of accidents involving glass doors in booths, (2) evidence of the relative cost of alternate materials and their installation, (3) evidence of the kind of materials used by other telephone companies, and (4) the opinions of experts in the field of safety.

It is hornbook law that a person charged with

maintenance of a hazardous condition is liable to persons injured thereby only if he knew or should have known of the condition. Such notice has two elements: (1) notice of existence of the condition and (2) notice of the hazardous nature of the condition. In the majority of cases, there is no doubt as to the hazardous nature of a condition and the question is whether defendant had notice of its existence. The reverse situation exists in the present case. Defendant clearly had notice of the existence of its glass telephone booth doors, but the question is whether it had notice that this was a hazardous condition. One obvious way it might have had notice was through prior similar accidents. Plaintiffs had the right through discovery to determine whether defendant's glass telephone booth doors had been involved in similar accidents. If in fact the present case was the first accident of this kind which had been brought to defendant's attention after decades of maintaining a myriad of glass-doored telephone booths, the doors had not proved themselves unsafe. The mere possibility of an accident like the present one is not enough. Some accidents are simply what are commonly called "freak" accidents. For example, the day following the trial in this case we noted in the Philadelphia Inquirer an article which commenced: "A honeymooner who was bouncing on the bed of a New York City hotel plunged 18 floors to her death after bouncing through a closed window early yesterday, her husband told police." Was the hotel negligent in not having a window which could not be bounced through? We certainly do not believe that the mere happening of the accident, without more, warrants such a conclusion.

In an age of rapidly changing technology, what is reasonably safe today may become unreasonably

unsafe tomorrow. If evidence were produced that at the time the glass doors herein were installed there was readily available an equally or less expensive material which was safer, this would certainly raise a question as to whether defendant acted reasonably in using a more hazardous material.

One might also ask, in this case, what a reasonably prudent telephone company would have done under these circumstances. If, for example, there was evidence that the experience in the State of New York had caused that state's telephone company to install lucite instead of glass or to install a thicker glass instead of ordinary glass, such evidence might establish a standard by which to measure defendant's exercise of care.

Similarly, a safety expert would be in a position on the basis of his expertise to express an opinion as to whether the glass installation herein met a reasonable standard of care. In the present case during the trial, plaintiffs for the first time offered to put a safety expert on the stand. Defendant objected because plaintiffs had not previously responded to its discovery by indicating an intention to call such an expert. The court sustained defendant's position and did not permit plaintiffs to call this witness.

Determining a standard of care involves somehow drawing a line between what is reasonably careful or reasonably safe and what is not. Where ordinary conduct in which most people engage or with which they have experience is involved, the composite view of a group of citizens is a fair standard. Where technical matters are involved, however, we believe that agencies other than juries are probably the best decision makers. In any event, where juries are used, they must be educated by expert witnesses. In the present case, would ¼"

thick glass have been required to make reasonable safety standards? What about ½" thick glass? Are some types of glass easier to break than others? How safe is so-called "shatterproof" glass? Would lucite or some similar material be financially feasible? These and many other questions would have to be answered before an intelligent decision could be made by a jury.

Defendant argued at the pretrial conference that its standards for safety were governed by the Public Utility Commission (P.U.C.) and since no P.U.C. regulation was violated, it had clearly met its standard of safety to the public. We rejected this view because we believe plaintiffs had the right, nevertheless, to prove that defendant had acted negligently. Regardless of the absence of P.U.C. regulation, a public utility, like any other company, cannot act in a way it has reason to know creates undue hazard to the public. However, plaintiffs herein made no effort to prove any facts which would tend to show that defendant should have known the glass doors herein were a public hazard. In our view, the absence of any P.U.C. regulation condemning glass telephone booth doors as hazardous suggests that experience has not established that such doors are in fact a hazard.

Plaintiffs urgently argued that the telephone booth door here involved was covered by the Act of June 2, 1971, P.L. 116, secs. 3 and 4, 35 P.S. §§5813 and 5814, requiring that certain installations use only "safety glazing material." The installations are specified as follows, section 4: [A[ny product commonly known as a sliding glass door, entrance door, fixed glazed panel adjacent to an entrance door which may be mistaken for means of ingress or egress, storm door, shower door, tub enclosure or

any other glazed structure for use in any hazardous locations. . . ." Section 1 of the act describes "hazardous locations" as follows:

"'Hazardous locations' means those installations, glazed or to be glazed in commercial and public buildings, known as framed or unframed glass entrance doors; and those installations, glazed or to be glazed in residential buildings and other structures used as dwellings, commercial buildings, and public buildings, known as sliding glass doors, storm doors, shower doors, bathtub enclosures, and fixed glazed panels adjacent to entrance and exit doors which because of their location present a barrier in the normal path traveled by persons going into or out of these buildings, and because of their size and design may be mistaken as means of ingress or egress; and any other installation, glazed or to be glazed wherein the use of other than safety glazing materials would constitute an unreasonable hazard as the Secretary of Labor and Industry may determine after notice and hearings; whether or not the glazing in such doors, panels, enclosures and other installations is transparent."

Obviously, telephone booths are not included in the installations covered by the act. Moreover, the act specifically provides that if installations not covered are to be added in the future, this must be done by the Secretary of Labor and Industry after notice and hearings. No action has been taken by the Secretary adding telephone booths to the list. The fact that the General Assembly in 1971 did not see fit to include telephone booths in the Act of 1971, supra, and that the Secretary of Labor and Industry has not since seen fit to add telephone booths again suggests that experience has not proven them to be a public hazard.

At the argument on post-trial motions plaintiffs for the first time specifically called the court's attention to regulation 2(f)(7) of the regulations issued by the Department of Labor and Industry which reads as follows and which was in effect at the time of the accident herein:

"Any Other Glazed Installation or Structure shall mean any portion of a building to which these regulations apply, wherein glazing materials are used whether as doors, panels, screens, brattices, portals or aperture closures and which when subject to human impact could shatter in such a manner as to cause injury to persons." (See now 34 Pa. Code §47.391.) Prima facie this regulation could apply to telephone booth doors. However, defendant cited Regulation (f)7(e) which was also in effect at that time and which reads as follows:

*"Applicable size and location of glazing panels regulated.*
The minimum size of glazing panels herein regulated will consist of an area over six square feet."

Plaintiffs argue that this latter provision does not exempt the telephone booth door in question because the two panels in the door jointly contained 6.76 square feet of glass. It is clear to us, however, that regulation (f)7(e) refers to the size of individual panels, not the collective size of more than one panel. We hold, therefore, that regulation (f)7(e) excluded the telephone booth door herein, assuming that otherwise it was covered by the regulations.

The case upon which plaintiffs principally rely is Roth v. Bankers Securities Corp., 242 F. 2d 509, 510 (3d Cir. 1957). In this case, the court of appeals, per curiam, affirmed a plaintiff's verdict in a case in which a plaintiff leaned against a glass wall in a

hotel and was injured when it shattered. The court concluded that "the jury was justified in finding that the type of glass used in this panel was not sufficiently strong to withstand the pressures which pedestrians on an adjacent sidewalk might be expected to exert against it." It found that plaintiff, leaning partly against the glass and partly against a subway railing, exerted a pressure of ten to 15 pounds. The facts in the court's per curiam opinion are not sufficiently elaborated for us to analyze the factual situation. We do not know, for example, whether there was evidence that other pedestrians had leaned against the glass or whether the condition of pedestrian traffic was such as to cause people to lean against the glass. The reference to ten or 15 pounds of pressure suggests that there was expert testimony in that case. The present case, on the contrary, is completely devoid of such testimony. Finally, the court of appeals emphasized foreseeability. There is, however, no evidence in the present case that defendant had reason to foresee the present accident. Under the circumstances, we would distinguish between awareness of remote possibility and foreseeing what is reasonably probable. The only Pennsylvania case cited in Roth, supra, is Pope v. Reading Co., 304 Pa. 326, 156 Atl. 106 (1931). That was a case in which a plaintiff was injured when a piece of concrete fell from the top of a wall. The court there rejected application of the doctrine of res ipsa loquitur but affirmed liability on the ground that defendant was chargeable with notice of the dangerous condition which existed, finding that pieces of concrete had been dropping from the wall for at least two weeks before the accident. Pope, supra, on its facts, is thus clearly distinguishable from the present case. We have read numerous

Pennsylvania cases involving the res ipsa loquitur rule and have found none with facts even remotely similar to the case at bar.

We thus granted the nonsuit herein because, in our view, the jury could have done nothing but speculate in attempting to resolve the question of defendant's negligence. Plaintiffs had the burden of proof and did not meet it simply by proving the happening of the accident. We are not convinced by plaintiffs' motion to take off the nonsuit and the arguments thereon that we were in error.

## ORDER

And now, August 18, 1980, plaintiffs' motion to take off the compulsory nonsuit herein is denied.