This is an appeal from the refusal of the court below to enter judgment for the defendant n. o v. or to grant a new trial, in an action of trespass for the death of a child.
The appellant constructed and maintained in a residential section of Easton for many years a reservoir to supply water and to furnish fire protection for its shops. It was constructed on an open lot bounded on the south by Wilkes-Barre Street, on the West by McKeen Street, on the North by Cooper Street and on the East by private premises. It had an area of 106 by 124 feet, and its greatest depth was about six feet. It was from 28.4 feet to 31 feet from the street curb line and was confined by an 8-foot bank. On the top of this bank the Company erected around this reservoir a board fence 7 feet 6 inches high. The bank sloped steeply on the inside of the fence to the water's edge and on the outside to the pavement. The Company placed "no trespassing" signs on the four sides of the reservoir.
The plaintiff's infant son, Robert, three years and nine months old, and his brother aged five years, left their home on Wilkes-Barre Street about a block away from this reservoir at two o'clock on the afternoon of *Page 274 
January 2, 1942. They proceeded to the reservoir, which was then frozen over, except at the intake valve. The children had been away from home about one-half hour when the older boy returned seeking help, and he returned with his grandmother, to the reservoir. It was then discovered that Robert was under water at a point near the intake. Action was brought by the parents in their own right, and by the father as administrator of the decedent's estate to recover for the child's death. The case was tried and a verdict was rendered for $5000 in favor of the parents and $500 for the administrator.
As the record stands the following facts must be taken as established. Children were known to play almost daily around the reservoir for many years. They coasted and rolled down the embankment outside the fence, fished for tadpoles in the summer and skated on the ice in the winter. Boards at various parts of the fence were missing for a long time, and this "was a common occurrence". The fence on the day of the fatality and near the point where the body was found had one of its boards missing, thereby leaving a hole 20 to 24 inches in width and this condition had existed for at least ten days before this boy was drowned, and there were also other holes in the fence. Since the Company's employees admittedly visited and inspected the reservoir twice each day, all of these facts were chargeable to the knowledge of the Company.
The reservoir in this case was a dangerous body of water because it was constructed near to the street and sidewalk in a well populated residential district where many children resided and played. Children were permitted to make a playground not only of the embankment on the outside of the fence, but of the reservoir itself. Under these circumstances, the principles laid down in Hogan v. Etna Concrete Block Co., 325 Pa. Pa. 49, 51, 188 A. 763, apply. We there said: ". . . Toleration of trespass for sufficient time gives rise to privilege which adds to the duties of the occupier in the maintenance and *Page 275 
use of his premises: Kay v. Pennsylvania R. R. Co., 65 Pa. 269,273. The 'playground rule' in Pennsylvania is a specialized application of this principle: see Fitzpatrick v. Penfield,267 Pa. 564, 572. Here there was ample testimony that for years children were wont to play daily on defendant's grounds without its objective disapproval. Therefore defendant may not disregard the likelihood of their presence in the conduct of its operations (O'Leary v. Pittsburgh and Lake Erie R. R. Co.,248 Pa. 4; Counizzarri v. Philadelphia and Reading Ry. Co.,248 Pa. 474) or in the maintenance of hazardous machines or artificial conditions: Henderson v. Continental Refining Co.,219 Pa. 384; Millum v. Lehigh Wilkes-Barre Coal Co., 225 Pa. 214; Carr v. Southern Pa. Traction Co., 253 Pa. 274; Costanzav. Pittsburgh Coal Co., 276 Pa. 90; see Rahe v.Fidelity-Philadelphia Trust Co., 318 Pa. 376, 379. The nature of the occupier's duty to such children is that of ordinary care. He must not create (O'Leary v. Pittsburgh and Lake ErieR. R. Co., supra; Counizzarri v. Philadelphia and Reading Ry.Co., supra) risks reasonably tending to cause injury." InThompson et al. v. Reading Co., 343 Pa. 585, 591, 23 A.2d 729, we applied the principle of law that even when an instrumentality (in that case a turntable) is essential to a possessor of land, if it can be made safe "even against meddling children" by a little attention and a slight outlay of money, the possessor who does not make it reasonably safe, is "subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in *Page 276 
intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein". Quoted from Restatement of the Law of Torts, Vol. 2, Sec. 339.
The danger was evident to the defendant company for it erected a high fence around the entire reservoir, presumably anticipating the exact nature of such an accident as occurred here. The defendant up to this point met its duty to such children. It failed in its duty of ordinary care, however, when it permitted this fence to get into a condition of disrepair such as was shown by the testimony. This condition destroyed the real purpose of the fence and under this testimony the jury could properly find the defendant negligent toward the minor plaintiff.
In Best, Adm. v. District of Columbia, 291 U.S. 411, the facts were that a wharf for unloading sand lay adjacent to a public street from which for want of a proper fence or barrier, its surface was visible and accessible, and children of tender years were attracted to the sand piles and were accustomed to enter and use the wharf as a playground, going in and out at their pleasure, and it was held in an action for the death of a child by drowning, alleged to have been caused by negligence in maintaining such a place that the owner was under a duty to take reasonable precautions either to prevent such use or to keep the flooring in repair so that children would not be exposed to the danger of falling through the holes into the water. In that case Chief Justice HUGHES, speaking for the Supreme Court, said: "Were the case merely one of an accessible wharf, it could not be said that the District would be subject to liability from the fact, without more, that a child strayed there and fell from the wharf into the water. The duty must find its source in special circumstances in which, by reason of the inducement and of the fact that visits of children to the place would naturally be anticipated, and because of the *Page 277 
character of the danger to which they would unwittingly be exposed, reasonable prudence would require that precautions be taken for their protection. Here, . . . the location of the wharf, unfenced, close to the street with the barrier partlydown, taken with the use of the wharf for unloading sand, make it a likely place for children to play. Sandpiles close at hand would constitute 'a bait' they would inevitably follow. . . They did follow it and they used the wharf as a playground at their pleasure. As the authorities of the District had reason to anticipate that use, there was a duty to take reasonable precautions either to prevent it or to keep the wharf in such proper state of repair that children would not be exposed to the danger of falling through holes." (Italics supplied.)
In Barthold v. Philadelphia, 154 Pa. 109, 26 A. 304, a case in which a boy 11 years old was drowned in a pool upon ground acquired by the city six months before the accident, we held that the question whether the city exercised ordinary care in leaving a pool enclosed by a wall lower than the surrounding surface, open to the access of children, in the public grounds, was a question of fact for the jury. We are of the opinion that in the present case the question was likewise for the jury.
The defendant also complains about the excessiveness of the verdict for $5000 in favor of the parents of the minor decedent. In Walker v. Perkins, 319 Pa. 469, 470, 181 A. 511, we said: ". . . where compensation is sought for the death of an infant, the recovery must be commensurate with the proof adduced of pecuniary loss. The determination by the court of the proper amount of a verdict involves a consideration of the age, the physical and mental condition of the child, and its probable earnings during minority as reflected by the occupation and circumstances in life of the parents. Occasionally other factors are involved and should be weighed with all the evidence in determining whether the jury reached *Page 278 
a just result. Tested by these rules we are of opinion the verdict in this case is too high."
We are of the opinion that the verdict for the parents is excessive and we reduce it to $3000. The verdict for $500 for the administrator is undisturbed.
The judgment of the court below as so modified, is affirmed.