**Long v. Manzo**

8

*Lewis Walder,* for plaintiffs.
*Dawn Riley Courtney,* for defendant Manzo.
*William B. Moyer,* for defendant Hawkins.

RUFE, J., *J.,* October 10, 1995—This opinion is written pursuant to an appeal by plaintiffs, Cynthia and Deborah Long from our order dated July 19, 1995, wherein we denied plaintiffs' motion for post-trial relief. Plaintiffs contend that this court erred in granting a motion for compulsory nonsuit in favor of both defendants at the close of plaintiffs' evidence.

On July 24, 1986, plaintiff Cynthia Long, then 13 years old, was left at home with her 11-year-old sister while their mother was at work. As was the custom that summer, the two girls walked to a nearby playground to meet their friends. At the playground the girls met

up with several children including additional defendant Margaret Hawkins, who was the 16-year-old babysitter for defendant Diane Manzo's three children. Plaintiff Long returned to the Manzo home with Ms. Hawkins and the Manzo children.

In the back of the Manzo residence was an above-ground pool. Over the course of the summer, plaintiff had gone swimming in the pool anywhere from one to five times and she knew that the pool's water level was only to her waist. Despite several different warning signs indicating that diving was prohibited, plaintiff accepted a dare to dive into the pool. Plaintiff misjudged the depth of her dive and hit her head on the bottom of the pool sustaining serious injuries to her neck.

A complaint was filed on July 27, 1987, charging defendant Manzo with various allegations of negligence and seeking compensation for injuries sustained as a result of the pool-related accident. Defendant Manzo joined Margaret Hawkins as an additional defendant on October 15, 1987. A jury trial was held on March 30 and 31, 1995. As part of their case, plaintiffs presented the testimony of Cynthia Long and the testimony of the babysitter, Margaret Hawkins, as of cross-examination. At the close of plaintiffs' evidence on March 31, 1995, defendants orally moved for a compulsory nonsuit. Although the court originally denied the request, upon returning from lunch recess and before the jury was returned to the courtroom, the undersigned reconsidered the motion for a nonsuit and found it to be warranted by the evidence. Consequently, a compulsory nonsuit was entered on behalf of both defendants.

Plaintiff timely filed a motion for post-trial relief requesting removal of the compulsory nonsuit and

claiming that the case should have been submitted to the jury to resolve several material facts and conflicts in the testimony. We denied plaintiffs' motion for post-trial relief and the instant appeal followed.

In reviewing the propriety of the grant of a compulsory nonsuit it is well established that:

"Plaintiff must be given the benefit of every fact and every reasonable inference of fact arising from the evidence, whether direct or circumstantial, and all conflicts must be resolved in plaintiffs [sic] favor. *McDonald v. Ferrebee,* 366 Pa. 543, 79 A.2d 232 (1951). A compulsory nonsuit may be entered only in a clear case where the facts and circumstances lead unerringly to but one conclusion. *McNett v. Briggs,* 217 Pa. Super. 322, 272 A.2d 202 (1970). Cited in *Jurich v. United Parcel Service of New York Inc.,* 239 Pa. Super. 306, 361 A.2d 650 (1976)." *Fisher v. Findlay,* 319 Pa. Super. 214, 215-16, 465 A.2d 1306, 1307 (1983).

A nonsuit will remain where, upon a review of the evidence of record, reasonable minds can be satisfied that the incident was not caused by the negligence of a defendant. *Koutsonikas v. Riddle Memorial Hospital,* 53 D.&C.2d 390 (1971).

Plaintiffs' first issue on appeal concerns our determination that Cynthia Long was a trespasser in the Manzos' pool at the time of the accident. Plaintiffs contend that the factual issue of whether Cynthia Long was told not to go into the pool was a question for the jury to determine. Our review of the evidence of record reveals no factual dispute on this issue.

In the Commonwealth of Pennsylvania, the duty of a possessor of land to a person entering upon his or

her land has been determined based upon the status of that person at the time of the accident. *Palange v. City of Philadelphia, Law Department,* 433 Pa. Super. 373, 640 A.2d 1305 (1994). The definition of a "trespasser" can be found in the Restatement (Second) of Torts §329 as: "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement (Second) of Torts §329 (1965).

The comments to section 329 go on to state that, "the determining fact is the presence or absence of a privilege to enter or to remain on the land." As long as the entry is not privileged, the liability on the part of the possessor of land is the same regardless of the manner of entry. Restatement (Second) of Torts §329 cmt. c (1969).

It was our determination, after a review of the evidence, that no dispute existed as to whether Cynthia Long entered the Manzos' pool on July 24, 1986 without privilege to do so. During her testimony, Cynthia Long admitted that she was told not to dive into the pool. (N.T. 3-30-95, pp. 72-73.) Cynthia Long also testified that she was never told that she could go into the pool that day and, in fact, she did not know if the babysitter, Margaret Hawkins, was even aware that she was in the pool. (N.T. 3-30-95, p. 58.) Cynthia Long also testified that she was never given permission to use the pool but simply assumed that as long as no one said anything she could just use the pool. (N.T. 3-30-95, p. 62.) Defendant Hawkins testified that she told Cynthia Long, at three separate times on July 24, 1986, that she was not permitted to use the pool that day because Mrs. Manzo would be home shortly. (N.T. 3-31-95,

12

pp. 19-20.) As stated by the undersigned when granting the compulsory nonsuit, "It is clear that no one ever invited her [meaning Cynthia Long] or gave her permission on the day in question to enter the pool, and therefore the standard of duty is that owed to a trespasser with regard to access to the pool." (N.T. 3-31-95, p. 89.)

It is true that, ordinarily, the question of whether an individual is a trespasser, a licensee or an invitee is one to be resolved by the jury. *Palange v. City of Philadelphia, Law Department, supra;* see also, *Slobodzian v. Beighley,* 401 Pa. 520, 164 A.2d 923 (1960). However, where the evidence is insufficient to support the issue, it may be appropriate for the court to remove that issue from the jury. *Palange, supra* at 377, 640 A.2d at 1307. In the case at bar, the only evidence presented to support the proposition that Cynthia Long was permitted to be in the pool at the time of the accident was Cynthia's own testimony. As stated previously herein, Cynthia's testimony on this issue was void of any indication that she was privileged to be in the pool on July 24, 1986 at the time of the accident. Consequently, we determined that while Cynthia may have been permitted to be at the Manzo home on July 24, 1986, she was in no way granted permission to be in the pool.

Secondly, plaintiffs assert that there remained a jury question as to whether defendants satisfied the duty of care owed to Cynthia Long under section 339 of the Restatement (Second) of Torts. Again, we determined that the evidence of record was insufficient to create a factual question for the jury.

Section 339, titled "Artificial conditions highly dangerous to trespassing children" was adopted by the Penn-

sylvania Supreme Court in *Jesko v. Turk,* 421 Pa. 434, 219 A.2d 591 (1966). This section provides:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children." Restatement (Second) of Torts §339 (1969).

As the *Jesko* court pointed out, "[a]ll five requirements of section 339 must be satisfied if a possessor of land is to be held liable." *Jesko, supra* at 437, 219 A.2d at 592.

Here, the most compelling reason for denying liability was found in clause (c) of section 339. Case law dealing with that section indicates that liability will be imposed only in circumstances where the child involved is too young to appreciate the danger which could cause injury.

14

*Bruhn v. L.B. Smith Inc.,* 20 D.&C.4th 430 (1993). Typically, this rule has been applied to very young children, but it has also been applied to children 14 years of age and older. As stated by the court in *Bruhn,* "Regardless of the child's age, each case must be decided on its particular facts, the critical factor being the child's ability *vel non* to recognize a given risk." *Bruhn, supra* at 436. (emphasis in original)

Moreover, Pennsylvania case law supports the proposition that dangers stemming from a body of water are known to children at an early age. *Jennings v. Glen Alden Coal Company,* 369 Pa. 532, 87 A.2d 206 (1952). In *Jennings,* a 13 1/2-year-old boy went swimming in a hole created by defendant's strip mining operations and which had filled with water. While swimming, the boy went down and was drowned. In applying section 339(c) of the Restatement, the court held:

"It certainly cannot be said that a normal boy 13 1/2 years of age who has been in and around water often enough to have learned how to swim does not realize the risk involved in swimming in deep water. We have repeatedly held that the perils contained in a body of water are obvious to children at an early age: *Simon v. Hudson Coal Co.,* 350 Pa. 82, 38 A.2d 259 [1944]; *Murdock v. Pa. Railroad Co.,* 150 Pa. Super. 156, 27 A.2d 405 [1942]." *Jennings, supra* at 536, 87 A.2d at 208.

The same rationale can be applied to the case at bar. Cynthia was only weeks away from being 14 years old. She testified that prior to the day of the accident she swam on a regular basis. (N.T. 3-30-95, p. 54.) Two years before the accident, the Long family belonged

to a swimming club called Penn Warner. (N.T. 3-30-95, p. 54.) Cynthia stated that she swam approximately 30 to 40 times that summer at Penn Warner. Cynthia had been swimming since she was 4 years old and had received formal swimming instruction. (N.T. 3-30-95, p. 54.)

Moreover, Cynthia admitted that she knew the Manzo pool was only four feet deep and she knew that the water only came up to her waist. (N.T. 3-30-95, p. 63.) Cynthia also conceded that when she thought the water was too shallow to do a "deep dive" she would do a "skim dive." (N.T. 3-30-95, p. 69.) She further admitted that she read the "no diving" signs posted in and around the pool. Although Cynthia stated that the signs did not mean anything to her, upon further questioning Cynthia acknowledged that she understood that "no meant no" and she also knew what diving was. (N.T. 3-30-95, pp. 77-78.)

Cynthia dove into the pool on a dare. When asked about the nature of a "dare," Cynthia stated that people only dare you to do dangerous things because safe things could not be considered dares. (N.T. 3-30-95, p. 65.) Cynthia admitted that she was told not to dive into the pool but that she did it anyway. (N.T. 3-30-95, p. 73.)

Clearly, based upon the above stated facts, section 339(c) cannot apply. This was not a case where a child fell into the pool, but rather, a case where a child almost 14 years of age chose to deliberately dive head first into four feet of water. The reasoning proffered by the *Jennings* court is cogent in this case. "The duty of a possessor of land to trespassing children does not

extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them." *Jennings, supra* at 537, 87 A.2d at 208-209. Cynthia Long was of sufficient age and understanding to fully appreciate the danger of diving head first into the Manzos' pool. Cynthia's own testimony refuted the proposition that diving into the pool constituted an unrealized danger. Thus, there was no factual dispute that section 339(c) of the Restatement (Second) of Torts was not satisfied. Since all five elements of section 339 must be satisfied in order for a possessor of land to be held liable, a compulsory nonsuit was appropriate because plaintiffs failed to establish any legal duty on the part of the defendants to protect Cynthia Long from an accident of this type. *Bruhn, supra* at 440.

Additionally, plaintiffs argue that this court erred in entering a compulsory nonsuit because defendant Manzo introduced evidence during plaintiffs' case by offering and/or identifying exhibits during cross-examination of plaintiff, thus waiving defendants' right to a compulsory nonsuit. Specifically, plaintiffs refer to a photograph of the Manzo pool identified as "D-2" which was referred to while Cynthia Long was on cross-examination.

A trial court cannot grant a nonsuit after the introduction of evidence by the defendant. *F.W. Wise Company Inc. v. Beech Creek Railroad Company,* 437 Pa. 389, 263 A.2d 313 (1970). However here, as in *Lonsdale v. Joseph Horne Company,* 403 Pa. Super. 12, 587 A.2d 810 (1991), the photograph was never admitted into evidence to become a formal part of the case. Therefore, since the photograph was never offered nor entered

into evidence, the court could not and did not consider it when ruling on the motion for nonsuit.

Plaintiffs also contend that defendant Manzo exceeded the bounds of proper cross-examination so as to elicit testimony constituting a defense, thereby waiving the right to the grant of a nonsuit. Plaintiffs point to questions posed by Diane Manzo's counsel concerning the number of friends Margaret Hawkins was allowed to have over at the Manzo home while she was babysitting. After reviewing the testimony, we determined that the defendant did not exceed the bounds of cross-examination so as to elicit matters constituting a defense to the cause of action. This court thoroughly recited its reasons for granting the nonsuit and the fact that Margaret Hawkins had more than one friend at the Manzo home on the day of the accident was in no way mentioned as a basis for the nonsuit. Plaintiff failed to demonstrate from the transcript any cross-examination by either defendant which was beyond the scope of direct examination so as to constitute evidence of a defense. As stated previously, it was the testimony of plaintiff Cynthia Long which prohibited a finding of duty on the part of the defendants. Defendants promptly moved for a nonsuit at the close of plaintiffs' case and there was nothing to prevent the court from entertaining such a motion. Since the motion was granted based solely upon plaintiffs' evidence, there was no basis to remove the compulsory nonsuit.

In light of plaintiffs' inability to have established a prima facie case of negligence against either defendant, we found the compulsory nonsuit to have been a proper ruling and, therefore, denied plaintiffs' post-trial request for removal of the nonsuit.